This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                    **NO. A-1-CA-35521**

**BRIDGET TRUJILLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Ben A. Ortega
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**BOHNHOFF, Judge.**

{1}     Bridget Trujillo (Defendant) was arrested for and ultimately convicted in district court of driving under the influence of intoxicating liquor or drugs (DWI) and

reckless driving. On appeal, Defendant raises four challenges: (1) the district court erred in reversing what she claims was a mid-trial reversal of a previous ruling that a police officer's lapel camera video would not be admitted at trial as substantive evidence; (2) there is insufficient evidence to convict Defendant of DWI because the State failed to prove that Defendant had not consumed alcohol after Defendant had stopped driving; (3) a private citizen who witnessed the crash unlawfully arrested Defendant and, as such, testimony or evidence from this witness should have been suppressed; (4) the district court erred in determining that a metropolitan court guilty plea is valid proof of a prior DWI conviction because there is no evidence of a finding of guilt by that court. We affirm the district court on all of these issues.[1]

**BACKGROUND**

{2}     The evening of May 4, 2014, Defendant arrived at her friend Mark Ponce's townhouse in Albuquerque, New Mexico with a 12-pack of beer. The two drank together into the night, Defendant consuming eight beers and Ponce consuming four. As Defendant was leaving the parking lot of Ponce's townhouse, she crashed into David Lee's parked Honda Civic and then continued driving and crashed into an SUV

---

[1]Before addressing Defendant's arguments, we note her disregard of the appellate rules' briefing requirements. Defendant's brief in chief fails to comply with the requirement in Rule 12-305(D)(1) NMRA to use fourteen point or larger font. Defense counsel is admonished to comply with the Rules of Appellate Procedure.

with enough force to launch the SUV through the exterior wall of a nearby townhouse. Lee, a resident of the complex, witnessed the incident.

**{3}** Officer Tim McCarson of the Albuquerque Police Department arrived on scene ten minutes after being dispatched. Officer McCarson arrested Defendant for DWI, and she was subsequently charged in district court with DWI and reckless driving.

**{4}** On April 20, 2015, Defendant filed a pretrial motion to suppress all evidence from Lee, arguing that Defendant was subject to an illegal motor vehicle code stop by Lee and, as such, all evidence from Lee should be suppressed. The district court denied this motion. On June 22, 2015, Defendant's first jury trial began. The district court declared a mistrial when Ponce began to testify about Defendant's prior three DWIs.

**{5}** The reset trial began on October 19, 2015, as scheduled. The State called three witnesses to testify: Ponce, Lee, and Officer McCarson. Ponce testified that Defendant had come over to his house with a 12-pack of beer. Defendant consumed eight beers and was in no shape to drive. Ponce hid Defendant's keys and told her she could stay on his couch or that he could walk her home. Ponce was under the impression that Defendant would sleep on the couch, and he went upstairs to go to bed. Minutes later he heard a car start and then a crash, and he quickly ran outside. He saw Defendant in the driver's seat of her car, and she asked him several times, "What did I do?" Defendant tried to flee the scene of the accident, but two or three neighbors grabbed

her and held her until police arrived. Ponce stated that he initially told police he was the driver of Defendant's car, but he said that it was "stupid" for him to do that, and he was only trying to protect her. When asked by the prosecutor who was driving the vehicle, Ponce identified Defendant.

{6} Lee testified that he was playing Xbox with the front door of his townhouse open when he heard a "crunch." "I saw the tail lights as they were pulling away from the front of my vehicle. I . . . ran outside, and [saw] the car back up again, pull forward, make a hard left, and straddle the median and slam into the back of another car . . . [a]nd it slammed into the back of that vehicle, pushed it into the house, and I watched the whole thing." He further stated, "After the vehicle went into the house, she was still full throttle, the smoke of the tires, and I could see the smoke. Lee testified that Defendant was the driver of the vehicle involved in the crash, and when asked by the prosecutor if he was certain it was a female driver he said, "Yes. I'm very certain of that. There's a lot of stuff that I don't forget at all, and it's people's faces and what they're wearing." He further testified, "I walked out into the street, put my hands up, [and] asked her to stop the vehicle. When I walked up, the window was down. I pulled the keys out of the ignition[,] and told her to sit on the curb and wait for [the police] to get there." Lee stated that Defendant was the only one in the vehicle and that he never saw Defendant consume alcohol after the crash occurred.

{7}     Officer McCarson testified that he arrived on scene ten minutes after the call was dispatched to him. When Officer McCarson arrived on scene, Lee informed him that it was Defendant who was driving the car. Defendant was sitting in the passenger seat of the vehicle when he arrived. He smelled a strong odor of alcohol on her and saw she had bloodshot eyes, slurred speech, and appeared intoxicated. Defendant also admitted to Officer McCarson that she had been drinking. He observed only one open container of alcohol in the center console of Defendant's vehicle.

{8}     When asked by defense counsel to factor in the possibility that Defendant could have consumed alcohol after the crash, Officer McCarson responded, "I can't factor that in because there were no admissions or conversations to that effect." Officer McCarson then stated that Defendant refused to take a field sobriety test and, having enough evidence to believe she was intoxicated and the driver of the vehicle, he placed her under arrest.

{9}     During the prosecutor's examination of Officer McCarson, portions of his lapel camera video were shown to the jury. Three short clips were shown: a clip of Officer McCarson arresting Defendant, a clip of the wreckage, and a clip of Defendant at the police station refusing to take a breathalyser test. Officer McCarson was then excused, and defense counsel moved for a directed verdict, which the district court subsequently denied. Following deliberations, the jury returned a verdict of guilty.

5

{10}     At Defendant's sentencing hearing, the State entered into evidence Defendant's three prior DWI convictions that occurred in 1993, 1999, and 2000. Defense counsel objected to the admission of the 1993 conviction, arguing "[t]he check box that . . . [D]efendant was found guilty or the [c]ourt accepted the guilty plea, there is no indication of that in this record provided." The district court responded that "Judge Keisha Caldwell signed this, where it says, ' . . . [D]efendant having been,' checked the box, 'pled guilty,' it says 'traffic lane violation and of driving while intoxicated, first offense[.]' . . . So I find that there are three valid prior offenses. The district court accepted the three prior DWIs as valid convictions making Defendant's DWI in this instance her fourth and thus a felony offense. Defendant was sentenced to eighteen months imprisonment with nine months suspended.

**DISCUSSION**

**A.      The District Court Did Not Reverse Its Prior Ruling Mid-Trial Regarding the Admissibility of the Lapel Camera Video**

{11}     Defendant argues that the district court erred when it first excluded a lapel camera video of Defendant, then affirmed its decision on a pretrial motion to reconsider, and then "reversed its ruling mid[-]trial" and admitted the video. Defendant further argues that she relied to her detriment on the earlier ruling in preparing for trial and when contemplating a plea offer, and this "sudden" change of mind by the district court compromised Defendant's trial strategy.

**{12}** "In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the [district] court of the nature of the claimed error and invokes an intelligent ruling thereon." *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (internal quotation marks and citation omitted). At the beginning of the reset trial on October 19, 2015, defense counsel stated that he thought the entire lapel camera video had been excluded and stated "that is what I came to trial with." The district court then corrected counsel, explaining that only portions of the video had been excluded. Defense counsel responded, "Understood[,]" and made no further comment regarding the video. Because it does not affect our decision, we will assume that this exchange preserved Defendant's claim of error.

**{13}** To summarize, nothing in the record supports Defendant's argument that the district court reversed mid-trial its previous ruling regarding the admissibility of the lapel camera video. The record instead reveals that the district court's rulings on the matter were consistent throughout the entire proceeding. Thus, the premise to Defendant's argument is false.

**{14}** On June 22, 2015, during the first trial, Defendant moved to exclude portions of Officer McCarson's lapel camera video. Specifically, she asked that the lapel camera video interview between Officer McCarson and Lee, from 16 seconds to 3 minutes on the first CD, and the interview between Officer McCarson and Ponce, from 32 seconds to 3 minutes on the second CD, be excluded because they were

hearsay. Defense counsel stated that "[t]he balance of the video we don't object to being shown because it doesn't contain any hearsay statements such as the one of the interview of . . . Lee or the one of . . . Ponce . . . but we move the [c]ourt to exclude those portions of [Officer] McCarson's [lapel] video which include the hearsay which [is] the interview of Lee and of Ponce[.]" The district court agreed and ruled that the only portions of the lapel video that would be admissible were Officer McCarson's interactions with Defendant. The district court further determined that Officer McCarson's explanation to Defendant that there was "mandatory jail time" would need to be excluded from the third CD as well. The prosecutor agreed to edit the video accordingly. Defense counsel confirmed his understanding of the district court's ruling by stating, "[j]ust for the record, Your Honor, motion granted, 16 seconds to 3 minutes on the first video [of Lee's interview with Officer McCarson], 32 seconds to 3 minutes on the second video [of Ponce's interview with Officer McCarson], and then the portion where the penalties for the refusal are on the third video to be excluded[.]"

{15}     At a hearing on September 14, 2015, the district court heard the State's motion to reconsider the court's original decision concerning the lapel camera video. The State asked the district court to allow the introduction into evidence of "the audio portion of the APD lapel [video] which had been previously excluded based on an objection to hearsay." The prosecutor argued the interviews of Lee and Ponce fell under a

8

hearsay exception, whereas defense counsel stated "our position is for the [c]ourt to stick with its previous ruling[.]" The district court denied the State's motion and ruled, consistent with its original decision, that the portions of the lapel camera video that contained the interviews of Ponce and Lee were to be excluded, although they would be admissible to refresh a recollection or to impeach a witness.

{16}     On October 19, 2015, at the beginning of the reset trial, the prosecutor stated that he intended to play the agreed-upon portions of the lapel camera video to which, as stated above, defense counsel responded, "My understanding was to exclude the video because it was hearsay." The prosecutor responded:

> I think the [c]ourt's ruling was it was based on a hearsay argument, and the defense provided the redaction numbers to the part that should be eliminated. What we have done is we have eliminated any speaking portion, any audio, so none of that exists. But what is left is the video of the events. The only speaking portions are the contact with [D]efendant with the officer.

Defense counsel stated, "My understanding was that you weren't going to allow the video, Your Honor, so that is what I came to trial with." The district court responded:

> The video that includes portions strictly of [Defedant] and her talking to the officers, that is admissible as a statement of a party opponent. Anything involving any questions to any other witnesses, those witnesses are not party opponents and those things may be used to either impeach that witness when they testify or to refresh a witness' recollection. Those portions will not be shown other than for impeachment or recollection or for refreshing a recollection. Those portions which involve [Defendant] talking to the officers, those are admissible. I'm sorry if I didn't make my ruling clear.

9

Defense counsel then stated, "Understood[,]" and the trial continued.

{17} On October 20, 2015, the lapel camera video was shown to the jury in its redacted form with no objection from defense counsel. The first video is four minutes long and includes Officer McCarson speaking with Defendant, Defendant refusing to take a field sobriety test, and Officer McCarson arresting Defendant. Only interactions with Defendant are shown in this video. The second video is one and a half minutes long and has no sound. It shows the wreckage from the accident—a car pushed halfway into a townhouse, the dented front bumper of Defendant's car, and the dented bumper of the third vehicle. The third video is five minutes long and shows Defendant at the police station refusing to take a breathalyzer test and the officer informing her of the consequences of refusing to take the test. The videos were introduced in the exact fashion that the district court ordered at the first trial, including the two on-the-scene interviews of Lee and Ponce excluded in their entirety, and only statements between Defendant and Officer McCarson heard.

{18} Defendant claims in her reply brief that the district court (1) ruled the video would not be admissible, (2) admitted all but a few seconds of the video, (3) issued a written order excluding the video. None of these statements are true.

{19} First, the district court never ruled that the video would not be admissible. The court ruled only that the hearsay portions of the video would not be admissible. Second, the court admitted only the portions of the video that all parties agreed were

admissible on June 22, 2015. Third, the court never issued a written order excluding the video. Defendant cites to the district court's denial of the State's motion to reconsider, but the district court simply denied the State's motion to reconsider, ruling that the only portions of the video that would be submitted to the jury were the portions where Officer McCarson and Defendant are interacting. We caution defense counsel to be mindful of his obligation of candor to this Court. *See* Rule 16-303(A)(1) NMRA; *In re Venie*, 2017-NMSC-018, ¶ 22, 395 P.3d 516.

## B.      Sufficient Evidence Supports Defendant's DWI Conviction

{20}      Defendant argues that without a driving-impairment nexus, there is insufficient evidence to convict her of DWI. Defendant argues that the alcohol causing impairment must be consumed before or during driving, and here there was no proof that alcohol was not consumed after Defendant stopped driving.

{21}      "We review the evidence introduced at trial to determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179 (internal quotation marks and citation omitted).

> We view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all inferences in favor of the verdict. We do not reweigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict. Furthermore, the jury is free to reject [the d]efendant's version

11

of the facts. Finally, we note that this Court cannot consider the merit of evidence that may have supported a different result.

*Id.* (citations omitted). Defendant preserved the claimed error when she unsuccessfully moved for a directed verdict during the trial.

{22}   Pursuant to NMSA 1978, Section 66-8-102 (2010, amended 2016), New Mexico law requires that the State prove that a defendant was impaired at the time that he or she drove. Defendant relies on two cases that address when in a DWI case the evidence is sufficient to prove a driving-impairment nexus.

{23}   Defendant points first to *State v. Mailman*, 2010-NMSC-036, ¶ 22, 148 N.M. 702, 242 P.3d 269. There, the defendant argued that the state did not present sufficient evidence that the defendant was the driver of the vehicle or was intoxicated before his vehicle broke down in the parking lot of a convenience store. A police officer approached the defendant in the parking lot and observed an open can of beer on the center console of the defendant's vehicle and smelled a strong odor of alcohol coming from the defendant. *Id.* ¶¶ 2-3. The officer looked for, but could not find, the keys to the defendant's car and was unable to start the car without a key, leading him to conclude that the vehicle was inoperable. *Id.* ¶ 5. The defendant admitted to drinking a six-pack of beer earlier and refused to take a sobriety test. *Id.* ¶¶ 4-5. Our Supreme Court held that evidence that (1) the defendant "was in a non-moving, inoperable vehicle attempting to make a phone call[,]" (2) the defendant told the officer that his

12

car broke down, and (3) the defendant asked the officer to help him arrange a tow, was insufficient as a matter of law to prove actual physical control. *Id.* ¶ 21. In so holding, our Supreme Court explained that "[w]hile the operability of the vehicle may be highly relevant to [the] determination [of actual physical control], it is not necessarily dispositive." *Id.* ¶ 19.

{24} Our Supreme Court further determined that "[a]ctual physical control is not necessary to prove DWI unless there are no witnesses to the vehicle's motion and insufficient circumstantial evidence to infer that the accused actually drove while intoxicated. Such evidence may include the accused's own admissions, the location of the vehicle next to the highway, or any other similar evidence that tends to prove that the accused drove while intoxicated." *Id.* ¶ 28 (emphasis omitted). Our Supreme Court ultimately reversed the defendant's conviction on due process grounds and held that he was not in actual physical control of his vehicle as a matter of law, and remanded the case for a new trial based solely on whether the defendant actually drove while intoxicated. *Id.* ¶ 28.

{25} Here, unlike in *Mailman*, Defendant's impaired driving and prior drinking were witnessed—Lee heard and saw Defendant crashing into two vehicles, Ponce testified that Defendant was the driver of the vehicle and had consumed eight beers prior to the crash, and the collisions themselves are evidence of impairment. Therefore, proof of

13

actual physical control is not necessary to prove Defendant's DWI, and Defendant's reliance on *Mailman* is misplaced.

{26}     Defendant also analogizes this case to *State v. Cotton*, 2011-NMCA-096, 150 N.M. 583, 263 P.3d 925, because Defendant could have parked and then drank. In *Cotton*, this Court reversed the defendant's conviction for aggravated DWI where the state provided no evidence at trial that the defendant actually drove while impaired. *Id.* ¶ 1. The defendant in *Cotton* was parked on the side of the road and was seated in the driver's seat with no keys in the ignition when the officer approached him. *Id.* ¶¶ 4-5. No evidence was presented in *Cotton* to establish when the defendant drove, that the defendant's driving and drinking overlapped, and that the defendant had an intent to drive when he was intoxicated. *See id.* ¶¶ 5-6, 14. Because there was nothing linking the defendant's impairment with any prior driving, "[the d]efendant could have parked and then consumed the beer." *Id.* ¶ 14.

{27}     In *Cotton*, there were no witnesses to the vehicle's motion, and there was insufficient circumstantial evidence to allow for an inference that the accused actually drove while intoxicated. *Id.*; *see Mailman*, 2010-NMSC-036, ¶ 28. *Cotton* is therefore distinguishable. Rather than happening upon a parked car, without any idea of how long it had been there, Officer McCarson arrived ten minutes after being dispatched to the accident involving Defendant. There was testimony from Ponce that Defendant had consumed eight beers that evening; Ponce tried to take away the keys to

14

Defendant's car because he was convinced she was not fit to drive; and the crash occurred within minutes after Ponce last saw Defendant.

{28} In addition, Lee testified that he saw Defendant crash into the parked SUV with enough force to send it through the wall of a townhouse. He further testified that, even after Defendant had crashed into the SUV, she was still fully pressing on the gas peddle causing smoke to emanate from the tires of her car. After witnessing the crash, Lee immediately walked up to the car window, pulled the keys out of the ignition, and told Defendant to sit on the curb and wait for police to arrive. Lee stated that Defendant was the only one in the vehicle and that he did not observe Defendant consume alcohol after the crash occurred.

{29} Ponce also testified that Defendant attempted to flee the scene after the accident and was restrained by several neighbors until police arrived ten minutes later. The brief time between Defendant's observed impaired driving, Lee arriving at Defendant's vehicle, the neighbors restraining Defendant after she attempted to flee, and police arriving on scene negates Defendant's argument that she became intoxicated after the crash. Defendant was free to try to convince the jury that her intoxication resulted from post-crash consumption of alcohol, but the jury was free to reject the argument based upon the foregoing evidence. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{30} Defendant provides no authority for her legal argument that the State had to prove not only impairment at the time of the crashes but also no further impairment following the crash. *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (holding that "appellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists"). Accordingly, we determine that the evidence presented was sufficient to support a finding by a rational trier of fact that Defendant drove while intoxicated.

**C.    Lee Did Not Illegally Arrest Defendant**

{31} Defendant argues that under NMSA 1978, Section 66-8-124(A), arrests by a layperson are forbidden and that Lee's actions constituted an illegal investigatory detention and arrest. As such, she urges any evidence obtained from Lee should be excluded.

{32} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). An appellate court "reviews factual matters with deference to the district court's findings if substantial evidence exists to support them, and it reviews the district court's application of the law de novo." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. Further, "[s]tatutory interpretation is an issue of law, which we review de novo." *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M.

466, 122 P.3d 50. Defendant preserved this claimed error by moving to suppress the evidence and testimony from Lee.

{33}     Section 66-8-124(A) prohibits an "arrest" that is not executed by a commissioned, salaried peace officer: "No person shall be arrested for violating the Motor Vehicle Code . . . or other law relating to motor vehicles punishable as a misdemeanor except by a commissioned, salaried peace officer who, at the time of arrest, is wearing a uniform clearly indicating the peace officer's official status." New Mexico courts have interpreted "arrest" in this context to extend to temporary or investigative detentions. *State v. Slayton*, 2009-NMSC-054, ¶ 19, 147 N.M. 340, 223 P.3d 337. An investigative detention is a limited seizure of a person that must be justified by reasonable suspicion. *See State v. Sewell*, 2009-NMSC-033, ¶ 17, 146 N.M. 428, 211 P.3d 885. Further, when determining whether a person is seized, courts consider whether a reasonable person would have believed that he was free to leave. *State v. Jason L.*, 2000-NMSC-018, ¶ 15, 129 N.M. 119, 2 P.3d 856.

{34}     The exclusionary rule stems from the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution, the latter of which states:

> The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation.

17

N.M. Const. art. II, § 10. "[T]he provisions of the [F]ourth [A]mendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution do not apply to intrusions by private persons." *State v. Johnston*, 1989-NMCA-063, ¶ 10, 108 N.M. 778, 779 P.2d 556; *see State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 44, 130 N.M. 386, 25 P.3d 225 (Baca, J., concurring) (noting that "[i]n order to invoke the protections of our state constitution, there must be some 'state action' "). The exclusionary rule has been held inapplicable to evidence obtained by a person acting solely in a private capacity. *See State v. Fields*, 1964-NMSC-230, ¶ 23, 74 N.M. 559, 395 P.2d 908.

{35} In arguing that Lee illegally arrested Defendant and thus the remedy of exclusion is applicable, Defendant relies on *Slayton* and *State v. Bricker*, 2006-NMCA-052, 139 N.M. 513, 134 P.3d 800. In *Bricker*, the defendant, who was driving with a suspended license, was placed under custodial arrest by a police officer and taken to the police station instead of being issued a citation and then released from custody as required by statute. *Id.* ¶¶ 1-2. The defendant appealed the denial of his motion to suppress methamphetamine found in his wallet as he was being booked at the police station. *Id.* ¶¶ 1, 3. This Court held that the police officer who arrested the defendant was authorized, pursuant to NMSA 1978, Section 66-8-123(A) (1989, amended 2013), only to issue the defendant a citation and release him. *Bricker*, 2006-NMCA-052, ¶ 14. Thus, the seizure was unconstitutional under Article II, Section 10

18

of the New Mexico Constitution, and the defendant's motion to suppress should have been granted. *Bricker*, 2006-NMCA-052, ¶¶ 14, 30.

{36} In *Slayton*, after rear-ending a vehicle and leaving the scene of the accident, the defendant was handcuffed in his driveway by a police service aide, who worked for the Roswell Police Department, while awaiting the arrival of police officers. *Slayton*, 2009-NMSC-054, ¶¶ 2-3. The defendant sought to suppress all evidence following his detention and arrest because the police service aide was employed as a noncommissioned officer and did not have the statutory authority to arrest him. *Id.* ¶ 5. The defendant also contended that the police service aide's lack of statutory authority to detain or arrest him was an unreasonable seizure under the Fourth Amendment entitling him to the remedy of suppression. *Id.* ¶ 9. The New Mexico Supreme Court determined the police service aide was a state actor. *Id.* ¶ 1. However, the Court further held that, while it agreed the police service aide did not have the authority to detain or arrest the defendant, the police service aide's lack of statutory authority to seize did not by itself amount to a violation of the Fourth Amendment's protections against unreasonable seizure. *Id.* ¶¶ 24, 33.

{37} Section 66-8-124 does not allow citizens' arrests for violations of the Motor Vehicle Code and other laws relating to motor vehicles. *Slayton*, 2009-NMSC-054, ¶ 27. It is not clear, however, that Lee's actions constituted an arrest for purposes of the Motor Vehicle Code. Lee approached Defendant's vehicle only after he witnessed

her strike his vehicle, drive onto the median, and strike another vehicle with enough force to push it into the interior of a home. Lee "walked out into the street, put [his] hands up, [and] asked her to stop the vehicle." He then "pulled the keys out of the ignition and told her to sit on the curb and wait for [police]. Lee did not remain with Defendant until officers arrived because he was checking on the neighbor who lived in the damaged townhouse. No witness testified that Lee had any physical contact with Defendant or restrained her in any way other than stepping in front of her vehicle and taking her keys. Ponce testified that after the crash "[t]he rest of . . . the neighbors [came] out[,]" "grabbed" Defendant after she attempted to flee, and "held her [until] the police came." There is no evidence that Lee was one of these neighbors. Lee simply deprived Defendant of the use of her vehicle by taking her keys. Lee did not restrict Defendant's freedom of movement or her ability to leave.

{38}     Further, and more fundamentally, Defendant argues that citizens' arrests for Motor Vehicle Code violations are to be remedied by exclusion of any evidence deriving from the arrest. However, the exclusionary rule does not apply to private citizens. *See Fields*, 1964-NMSC-230, ¶ 23. In addition, Section 66-8-124 does not provide for suppression as a remedy. Defendant argues that both *Bricker* and *Slayton* establish that the remedy for unlawful seizures, in the context of the Motor Vehicle Code, is exclusion under the New Mexico Constitution. Defendant's reliance on *Bricker* and *Slayton* is misplaced because these cases analyze the application of the

20

Motor Vehicle Code and unlawful seizures to a commissioned, salaried peace officer and a state actor. Defendant concedes that Lee was not a commissioned, salaried peace officer nor a state actor. The exclusionary rule is applicable only to actions by state actors. *Cardenas-Alvarez*, 2001-NMSC-017, ¶¶ 44-45 (Baca, J., concurring). We therefore reject Defendant's argument.

**D.     Exhibit 1A Was Proof of a Prior DWI Conviction**

{39}     Defendant argues that the district court erred when it used the record of a 1993 metropolitan court case, in which Defendant pled guilty to DWI, as a valid prior conviction for sentencing. She further argues that the court record does not reflect a finding of guilt.

{40}     As a matter of statutory construction, we review the district court's sentencing authority de novo. *State v. Utley*, 2008-NMCA-080, ¶ 4, 144 N.M. 275, 186 P.3d 904. Defendant preserved the claimed error when, during the sentencing hearing, she objected to the use of Exhibit 1A as proof of a prior DWI conviction.

{41}     In New Mexico, a plea of nolo contendere in a criminal proceeding provides the basis for a conviction. NMSA 1978, § 30-1-11 (1963); *see also State v. Apodaca*, 1969-NMCA-020, ¶¶ 14, 17, 80 N.M. 155, 452 P.2d 489. Section 30-1-11 provides in part:

> No person shall be convicted of a crime unless found guilty by the verdict of the jury, accepted and recorded by the court; or upon the defendant's confession of guilt *or a plea of nolo contendere, accepted*

21

*and recorded in open court*; or after trial to the court without jury and the finding by the court that such defendant is guilty of the crime for which he is charged.

(Emphasis added.) "A plea of nolo contendere accepted and recorded in open court is tantamount to an admission of guilt." *State v. Marquez*, 1986-NMCA-119, ¶ 7, 105 N.M. 269, 731 P.2d 965. Further, a conviction is a factual finding that the defendant is guilty of the crime for which he is charged. *See State v. Garcia*, 1983-NMCA-017, ¶ 26, 99 N.M. 466, 659 P.2d 918. A finding that the defendant is guilty is determined either in a trial or by a plea and a conviction may be entered when the defendant is found guilty of a criminal charge by verdict of the jury, upon the defendant's confession of guilt or a plea of nolo contendere. *See State v. Larranaga*, 1967-NMSC-047, ¶ 7, 77 N.M. 528, 424 P.2d 804 (approving the definition of "[c]onvicted" as "the establishing of guilt whether by [an] accused's admission in open court by plea of guilty to the charges presented, or by a verdict or finding of a court or jury" (internal quotation marks and citation omitted)).

{42} We disagree with Defendant that the metropolitan court record does not reflect a finding of guilt. The metropolitan court record establishes, from the fact of the DWI sentencing order, not only that Defendant pled guilty to the prior DWI in question but that the court accepted and recorded that plea. The court record, admitted into evidence as Exhibit 1A, includes a criminal complaint, a waiver of counsel, and a sentencing order signed by the judge presiding over the case. The sentencing order

22

clearly reflects that Defendant entered a plea of guilty and was sentenced for DWI. This outcome necessarily means that the metropolitan court found her guilty. Therefore, because there was a clear finding of guilt, the district court did not err in using the record as a valid prior conviction for sentencing.[2]

**IV. CONCLUSION**

{43}    We affirm Defendant's convictions for DWI and reckless driving.

{44}    **IT IS SO ORDERED.**

_____
                                    **HENRY M. BOHNHOFF, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**STEPHEN G. FRENCH, Judge**

---

[2]During the January 6, 2016 sentencing hearing, Defendant admitted on the record that she had been convicted of three prior DWIs, "all I can say is that, yes, I have had three DWIs, and I pled guilty because I was guilty[.]"

23