**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2009-NMCA-053

Filing Date: April 7, 2009

Docket No. 28,531

STATE OF NEW MEXICO,

       Plaintiff-Appellee,

v.

RICHARD GIPSON,

       Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY
Frank K. Wilson, District Judge

Gary K. King, Attorney General
Francine A. Chavez, Assistant Attorney General
Santa Fe, NM

for Appellee

David I. Rupp
Alamogordo, NM

for Appellant

## OPINION

**CASTILLO, Judge.**

**{1}** Defendant appeals his felony convictions for thirty-five counts of criminal sexual contact of a minor (CSCM), twelve counts of criminal sexual penetration of a minor (CSPM), and two counts of bribery or intimidation of a witness. On appeal, Defendant raises sufficiency issues surrounding some of his convictions for CSCM and CSPM. Specifically, he challenges the sufficiency of the evidence to support his convictions for counts two through seven of CSCM and the sufficiency of the evidence to support the jury's finding that he was in a position of authority as to the victim, Nicole—a finding which was required for conviction on all of the CSCM and CSPM counts. We affirm.

1

## I.       BACKGROUND

**{2}**     Defendant's relationship with Nicole began in 1997, and the incidents leading to the charges began in August 2001.  On December 12, 2006, Defendant was indicted by a grand jury on 76 counts.  A total of 49 counts went to the jury, and the jury convicted Defendant on all counts.  Defendant appeals the jury's verdict.  We will provide further factual detail as we address Defendant's arguments.

## II.      DISCUSSION

### A.      CSCM

**{3}**     Defendant first argues that the evidence was insufficient to support his convictions for counts two through seven of CSCM because the State failed to prove with sufficient certainty when the alleged crimes occurred.  He also contends that the State failed to rebut the possibility that at least some of these crimes did not occur during the relevant time periods because Nicole testified that Defendant's step-daughter, Stephanie, was present during those times and that nothing happened when she was present.

**{4}**     We review the evidence introduced at trial to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988).  We view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all inferences in favor of the verdict.  *See State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994).  We do not reweigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict.  *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789.  Furthermore, the jury is free to reject Defendant's version of the facts.  *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.  Finally, we note that this Court cannot consider the merit of evidence that may have supported a different result.  *State v. Kersey*, 120 N.M. 517, 520, 903 P.2d 828, 831 (1995).

**{5}**     To convict Defendant of CSCM, the State must prove beyond a reasonable doubt that (1) Defendant touched or applied force to Nicole's breast, buttocks or vagina; (2) Defendant, by reason of his relationship with Nicole, was able to exercise undue influence over her and use his authority to coerce her to submit to sexual contact; (3) Nicole was at least thirteen but less than eighteen years old; and (4) the incidents happened in the time frame specified in the instruction.  *See* NMSA 1978, § 30-9-13(C)(2)(a) (2003) (providing that CSCM of a minor in the third degree consists of CSCM perpetrated on a child thirteen to eighteen years of age when "the perpetrator is in a position of authority over the child and uses this authority to coerce the child to submit"); UJI 14-926 NMRA; *State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986) (observing that "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured").  The jury was given six separate instructions with the same language on each of counts two through

2

seven—except that each instruction specified a time period spanning a different month between October 1, 2001, and March 31, 2002, e.g., October 1, 2001, through October 31, 2001; November 1, 2001, through November 30, 2001, etc.

**{6}** Defendant challenges the six CSCM convictions spanning this period because he claims that the evidence was insufficient as to the specific number of times he allegedly committed the CSCM and that it was insufficient in light of testimony suggesting that Stephanie's presence may have precluded any wrongful conduct. In analyzing Defendant's challenge, we turn to the evidence introduced at trial concerning the relevant time periods and the evidence concerning when Stephanie was present.

**{7}** Nicole first provided background testimony as to how she came to know Defendant, the relationship between her family and Defendant's, and how Defendant would come to her house to fix things and to take the trash to the dump at the request of Nicole's mother. Nicole then testified regarding the first time Defendant subjected her to CSCM in August 2001, when Nicole was spending the night at Defendant's home. Nicole was thirteen years old at the time.

**{8}** Nicole also testified that she saw Defendant a few weeks after the August 2001 incident when he came to her home to take the trash to the dump. She testified that she did not want to accompany Defendant to the dump, but her mother pressured her to do so. According to Nicole, during this trip to the dump, Defendant stopped on the side of the road, kissed her, and put his hands on her breasts and her legs. Defendant unbuttoned her pants, placed his hands on her vagina, put his fingers underneath her underwear, and put his fingers into her vagina. Nicole testified that she did not report the incident because Defendant told her that if she did, a lot of people would be hurt, and Nicole was afraid that something would happen to her family members if she told anyone what had happened.

**{9}** After describing Defendant's September 2001 actions, Nicole testified that the same thing would happen every two to three weeks—every two weeks if a burn ban was in effect and every three weeks if there was no burn ban in effect. She testified that these trips started in September 2001 and continued until May 2005. Nicole's mother also testified that the trash trips happened two to three times a month and that she pressured Nicole to accompany Defendant even when Nicole was reluctant to go.

**{10}** In an effort to cast doubt on the jury's verdict for the CSCM counts from October 2001 to March 2002, Defendant asserts that Nicole's testimony was inconsistent regarding the time periods when the alleged wrongful acts occurred. He notes that after testifying as to the events of September 2001, Nicole was asked what she remembered next, and she responded that the next incident she remembered was in April of the next year. Although she had previously stated that Defendant came every two to three weeks to pick up the trash and reiterated this claim after the recess, Defendant claims that her remark that the next thing she remembered was in April 2002 rendered her testimony inconsistent as to the frequency of the alleged incidents of CSCM from October 2001 through March 2002. We are unpersuaded.

3

**{11}** Contrary to Defendant's contention, Nicole never testified that nothing happened on the trips to the dump after September 2001; nor did her testimony change after the recess. Our review of Nicole's testimony indicates that she consistently testified that the trash trips to the dump happened every two to three weeks and that something happened every time she was alone with Defendant. Although she testified that the next thing she remembered was an incident in April 2002, the jury could conclude that Nicole was addressing the next time Defendant subjected her to CSCM or CSPM apart from the trips to the dump. Therefore, we disagree that Nicole's testimony was contradictory as to what occurred between October 2001 and March 2002.

**{12}** In addition, even if Nicole's testimony appeared to be inconsistent on some points, such inconsistencies do not warrant reversal of Defendant's convictions because they are matters for the jury to assess in determining Nicole's credibility. *See State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 22, 128 N.M. 382, 993 P.2d 96 (holding that it is the "exclusive province of the jury to resolve factual inconsistencies in testimony" (internal quotation marks and citation omitted)); *cf. State v. Sosa*, 2000-NMSC-036, ¶ 8, 129 N.M. 767, 14 P.3d 32 (observing that the "credibility of witnesses is for the jury"); *State v. Gonzales*, 1997-NMSC-050, ¶ 18, 124 N.M. 171, 947 P.2d 128 (holding that it is the factfinder's prerogative to weigh the evidence and to judge the credibility of the witnesses). Based on the testimony of Nicole and her mother, we hold that sufficient evidence supports Defendant's convictions for counts two through seven of CSCM. *See generally State v. Sparks*, 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct. App. 1985) (defining substantial evidence as that evidence which a reasonable person would consider adequate to support a defendant's conviction).

**{13}** Defendant also contends that the method of charging him on counts two to seven—one count of CSCM for each month between October 2001 and March 2002—rendered his defense more difficult because of the uncertainty of the counts and when they occurred. He contends that the State's inability to sufficiently prove when the alleged bad acts occurred led it to take a "once a month something must have happened" approach to charging him, which was "very speculative" and patently unfair. We disagree.

**{14}** Nicole clearly stated that she accompanied Defendant to the dump every two to three weeks and that every time she accompanied him, he committed acts constituting the crime of CSCM. Her testimony was sufficient to support the State's charges of one count of CSCM for each month between October 2001 and March 2002. *Cf. State v. Corbin*, 111 N.M. 707, 710, 809 P.2d 57, 60 (Ct. App. 1991) (holding that there was sufficient evidence to support the defendant's convictions when "all of the testimony placed the incident between late November and mid-January"); *State v. Altgilbers*, 109 N.M. 453, 471, 786 P.2d 680, 698 (Ct. App. 1989) (affirming the defendant's convictions despite the lack of specificity in the dates of the alleged crimes because the victims "gave specific accounts of the acts of CSP and CSC, and the locations in which the acts occurred" and holding that even in the absence of specific dates, there was sufficient evidence to support a finding that the defendant committed the sexual offenses during the period alleged).

**{15}** Defendant also challenges the convictions for this time period because he claims that

4

the number of times Stephanie accompanied Defendant and Nicole to the dump was uncertain and, thus, he could not have been convicted for one count of CSCM for every month between October 2001 and March 2002. He notes that Nicole testified that Stephanie came along once or twice to take the trash and that when Stephanie came along, there were no problems. Defendant therefore claims that the jury should have found Defendant not guilty of at least one or two of the monthly counts of CSCM from the period of October 2001 to March 2002. We disagree.

**{16}** Our review of the trial testimony reveals ample evidence that Defendant and Nicole went to the dump two to three times per month in the months from October 2001 through May 2005. Nicole's testimony only indicates that Stephanie accompanied them once or twice at some point during this three-and-one-half-year period. There was no specific testimony that Stephanie accompanied Defendant and Nicole in the six-month period between October 2001 and end of March 2002. We are not persuaded that testimony about Stephanie's occasional presence—once or twice in a period of over three and one half years—is sufficient to call any of Defendant's convictions for the specific six-month period into question and, therefore, the jury could convict Defendant of counts two through seven. *See Sutphin*, 107 N.M. at 130-31, 753 P.2d at 1318-19 (holding that the appellate court views the evidence as a whole and indulges all reasonable inferences in favor of the jury's verdict, and "does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence").

**{17}** In sum, our review of the testimony introduced at trial persuades us to conclude that there was sufficient evidence to support Defendant's convictions for CSCM as charged in counts two through seven, and we affirm on this issue.

## B.    Position of Authority

**{18}** Defendant contends that there was also insufficient evidence as to counts 1 through 24 and count 47 to support a finding that he occupied a position of authority over Nicole. *See* § 30-9-13(C)(2)(a). Defendant apparently concedes that he was in a position of authority after Nicole discovered that he was the father of her half-sister, which occurred in May of 2003. Before that time, however, Defendant claims that he was just a neighbor and family friend. We understand him to argue that the evidence of his authority was insufficient because the challenged counts are based on events that occurred before May 2003.

**{19}** Section 30-9-13(C)(2)(a) states that CSCM of a minor in the third degree consists of CSCM perpetrated on a child thirteen to eighteen years of age when "the perpetrator is in a position of authority over the child and uses this authority to coerce the child to submit." A "position of authority" is defined as a "position occupied by a parent, relative, household member, teacher, employer or other person who, by reason of that position, is able to exercise undue influence over a child." NMSA 1978, § 30-9-10(E) (2005). Therefore, the position of authority finding is required to support Defendant's convictions for CSCM. Defendant is correct that he did not occupy one of the positions specified in the statute such as parent, relative, household member, teacher, or employer, such that his status alone placed him in a position of authority. *See id.* We disagree, however, with Defendant's assertion

5

that the evidence must show that he is "like or similar to" persons who are specifically identified in the statute. Section 30-9-10(E) permits the jury to find that Defendant was a person who, by reason of his relationship with Nicole, was able to exercise undue influence over her and that he used that influence to coerce her into sexual contact. *See also* UJI 14-926, UJI 14-945 NMRA. We thus consider whether substantial evidence supported a finding that Defendant used his relationship with Nicole in order to exercise undue influence over her. *See State v. Segura*, 2002-NMCA-044, ¶ 10, 132 N.M. 114, 45 P.3d 54.

**{20}** The testimony showed that Nicole and her sister Amanda became friends with Defendant's step-daughter, Stephanie, in approximately 1997. Nicole's mother worked with Defendant, and the families became good friends. The families did things together such as barbeques and sleep-overs. Defendant came to Nicole's house to fix things and to take the trash to the dump as requested by her mother.

**{21}** Nicole testified that she thought of Defendant as a father figure, and when other people were around, Defendant acted as a father figure. Nicole testified that (1) she rarely saw her own father who was frequently out of town; (2) her father stopped coming home at some point, and she could not reach him but instead had to wait for him to call her; and (3) she was not close to her father, and they did not talk.

**{22}** Nicole's mother testified that Nicole and Amanda probably spent the night at Defendant's house every other weekend. By allowing her daughters to spend the night at Defendant's home on a regular basis and by encouraging Nicole to accompany Defendant on trash runs, Nicole's mother entrusted Defendant with Nicole's care and indicated that she trusted him to act as Nicole's guardian when she was not present.

**{23}** Defendant and Nicole both testified that Defendant would take Nicole, Amanda, and Stephanie to work with him to allow them to earn some money. Defendant also testified that when Nicole spent the night at Defendant's house with Stephanie and Amanda, all three girls were expected to follow rules set by Defendant and his wife.

**{24}** Based on this evidence, the jury could reasonably conclude that Defendant was in a position of authority over Nicole in many different ways. He was considered by Nicole to be a father figure, he acted as a father figure when other people were around, and he was entrusted by Nicole's mother to act as her guardian at times. *Cf. State v. Gillette*, 102 N.M. 695, 702, 699 P.2d 626, 633 (Ct. App. 1985) (finding ample evidence to support a finding that the defendant, a boarder in the home of the child's mother for a period of time, occupied a position of authority based on evidence that the defendant was a "physically large, twenty-four-year-old" while the child was twelve, the defendant occasionally acted as the child's "boss," the defendant's "position in the family home was described as a 'babysitter,'" the defendant greatly influenced the child, and the child listened more to the defendant than to his own mother). In addition, Defendant took on the role of employer—allowing Nicole to earn money at his place of business. *Cf. State v. Trevino*, 113 N.M. 804, 807, 833 P.2d 1170, 1173 (Ct. App. 1991) (affirming convictions for CSCM involving coercion by the defendant through the use of his position of authority as an employer), *aff'd in part by State v. Orosco*, 113 N.M. 780, 833 P.2d 1146 (1992), and *aff'd in part*, 116 N.M. 528, 865 P.2d

1172 (1993); *Corbin*, 111 N.M. at 709, 809 P.2d at 59 (affirming the defendant/employer's convictions for CSCM involving use of authority and noting that "[s]ubmission to an authority figure's request is coerced if achieved through undue influence or effected by external forces"). Finally, Defendant's position as mother's trusted friend allowed him the opportunity to be alone with Nicole when she spent the night at his house and when she went to the trash dump in his truck. These opportunities allowed him to commit the sexual offenses when no one else was present and enhanced the chance that Nicole would feel powerless to prevent the contact. *See State v. Haskins*, 2008-NMCA-086, ¶ 14, 144 N.M. 287, 186 P.3d 916 (holding that a rational jury could have concluded that the defendant was in a position to exert undue influence over the victims, his massage clients, based in part on the victims' testimony that they were alone with the defendant in a confined space over which the defendant had control); *Trevino*, 113 N.M. at 807, 833 P.2d at 1173 ("In light of [the] defendant's ability to place [the victim] in a confined, private workstation and [the victim's] testimony that he was scared, we believe the jury could infer that [the] defendant used his position of authority to coerce [the victim] to submit to the sexual contact.").

**{25}** In sum, the evidence showed that due to his position as a trusted family friend who did chores at the behest of Nicole's mother, who kept Nicole overnight at his home, and who allowed Nicole to earn some money doing jobs for him, Defendant had the opportunity to sexually abuse Nicole, and his position of authority influenced her not to report the abuse to her mother. *Cf. State v. Gardner,* 2003-NMCA-107, ¶¶ 33-38, 134 N.M. 294, 76 P.3d 47 (reviewing the testimony of the victims and holding that there was sufficient evidence to support a conclusion that the unlawful contact "was at least in part a result of [the assistant principal's] position of authority" and that he used his position to gain the victims' trust, in order to have an opportunity to touch them and to cause them to submit to his touch).

**{26}** There was also ample evidence that Defendant used his position of authority to coerce Nicole into submitting to the sexual contact. *See id.* ¶ 38 (observing that a conviction under CSCM using a position of authority may be supported as long as the testimony permits the jury to "reasonably infer a connection between [the] [d]efendant's position of authority and his sexual contact with the victims, which is sufficient to infer the existence of coercion"). Defendant informed Nicole that if she told anyone of his wrongful acts, it would hurt a lot of people. Nicole also knew that Defendant had guns in his truck and house, she knew that Defendant always carried a gun, and she knew that Defendant was a good shot. Knowing the number of guns that Defendant had, Nicole interpreted his statement that a lot of people could be hurt to mean that Defendant was threatening her life or the lives of her family members if she told anyone about his actions. Based on these facts, the jury could conclude that Nicole was especially susceptible to being coerced and controlled by Defendant's warning.

**{27}** In addition, Nicole's continued acquiescence to the CSCM and CSPM over a period of years indicates that she indeed felt compelled to submit to the contact. *See Haskins*, 2008-NMCA-086, ¶ 14 (holding that "a rational jury could have found that Defendant used his position of authority as a trained professional to control the free action of the girls' wills by the very fact that they consented or failed to object to the massaging of their intimate parts").

7

**{28}** For these reasons, we hold that the jury could reasonably have found that Defendant was in a position of authority and that he used this position to exert undue influence to compel Nicole to submit to sexual contact.

### III.    CONCLUSION

**{29}**    We affirm.

**{30}    IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for _State v. Gipson_, No. 28,531**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-SE | Sexual Exploitation of Children |
| CL-SX | Sexual Offences |
| | |
| **EV** | **EVIDENCE** |
| EV-SS | Substantial or Sufficient Evidence |