This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                              **No. A-1-CA-34650**

**FERNANDO GARCIA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Daniel Viramontes, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Offices of Jennifer J. Wernersbach, P.C.
Jennifer J. Wernersbach
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BOHNHOFF, Judge.**

{1}    Defendant Fernando Garcia appeals from his conviction of aggravated driving while under the influence of intoxicating liquor or drugs (0.16 or above) (DWI), contrary to NMSA 1978, Section 66-8-102(D)(1) (2010). Defendant raises three issues on appeal: (1) the district court erred in sentencing Defendant as a fifth-time DWI offender; (2) there was insufficient evidence to support Defendant's DWI conviction; and (3) Defendant was arrested without probable cause. This is a memorandum opinion; because the parties are familiar with the facts and procedural posture of the case, we set forth only such facts and law as are necessary to decide the issues raised. We affirm.

**BACKGROUND**

{2}    On September 15, 2013, Officer Beau Johnston came across a white Oldsmobile with a flat tire parked on the shoulder of I-10, outside of Deming, New Mexico. Officer Johnston found Defendant sitting in the car. Based on his observations of Defendant, Officer Johnston arrested him for DWI. Following a breath test that recorded an alcohol concentration of 0.18, Defendant was charged in magistrate court with (1) third-offense aggravated driving while under the influence; (2) driving without a license; (3) no proof of insurance; (4) expired registration; and (5) having an open container of alcohol. The magistrate court bound the case over to district court

2

after the State determined that Defendant had four prior DWIs, thus making his fifth offense a fourth-degree felony.

{3} On December 16, 2014, the district court held a jury trial. Officer Johnston testified that he was patrolling I-10 and pulled over to assist Defendant after seeing his vehicle parked on the side of the highway near a guardrail. Officer Johnston was concerned that Defendant's vehicle created a hazard because it was not visible to approaching traffic. When Officer Johnston approached Defendant's vehicle, he observed that the vehicle was not running but the keys were in the ignition and Defendant was sitting in the driver's seat. Officer Johnston smelled a strong odor of alcohol coming from the vehicle. Defendant told Officer Johnston that he had just gotten the vehicle running, he was taking the vehicle out for a drive, and that he had already called someone for help. Officer Johnston testified that he was with Defendant for forty-five to fifty minutes and that no one arrived during that time to help Defendant. Officer Johnston asked Defendant if he had been drinking that day; Defendant admitted that he had drunk six beers that morning. Officer Johnston testified that Defendant was very sweaty, his eyes were bloodshot and watery, and his heart was visibly beating through his shirt. Officer Johnston observed a forty-ounce beer bottle sitting on the right passenger floorboard of the vehicle that was still cold and two-thirds to three-quarters full. Defendant was unable to perform the field

3

sobriety test because he had an injury to his leg. Instead, Officer Johnston administered the horizontal gaze nystagmus test and noted that the smell of alcohol was coming from Defendant's breath and person. Based on the results of the horizontal gaze nystagmus test, Officer Johnston placed Defendant under arrest. Officer Johnston noted that there were no houses in the vicinity, he did not see anyone walking in the vicinity, and there was no other indication that anyone other than Defendant was driving the vehicle. Officer Johnston transported Defendant to the Deming police station where Defendant submitted to a breath test.

{4}     Officer Arthur Perales testified that he was the officer who conducted the breath test on Defendant. He conducted the test twice on Defendant, and both times the results were 0.18, more than two times the legal limit.

{5}     Steve Duran, a friend of Defendant, then testified. He testified that Defendant had called him, stating that he had fixed his vehicle, and then the two men took the vehicle for a test drive. Duran testified that he had been driving the vehicle during the test drive. The vehicle broke down on the side of the highway. Duran went to go get help and walked to a mechanics shop to retrieve a spare tire. It took awhile for him to get the tire and by the time he returned Defendant was gone. Mr. Duran also stated that the blown-out car tire was still on the wheel rim.

**{6}** Defendant briefly testified. He denied that he had driven the vehicle, intended to drive the vehicle away, or told the officer he drove the vehicle that day.

**{7}** During the State's closing argument the prosecutor pointed out weaknesses in Duran's testimony: Defendant had told Officer Johnston that he had already called someone for help, but Duran testified that Defendant's phone was dead; Defendant also never told Officer Johnston that Duran had just left the vehicle to get help and never told Officer Johnston that he was not the driver of the vehicle. Defense counsel argued that there was no evidence that Officer Johnston saw Defendant driving and that Duran swore under oath that he was the driver of the vehicle, thus, there was no way to show that Defendant had control over the vehicle. After deliberating, the jury returned a verdict of guilty on all counts.

**{8}** On February 2, 2015, the district court held a sentencing hearing. During the hearing defense counsel stated, "Your Honor, this is a DWI. . . . He's looking at a year mandatory. . . . We're just looking for a one-year mandatory for a fifth offense DWI, and we ask the court to impose that to give him credit for the time served, and all the other mandatory requirements that come with a DWI." The State responded by arguing that Defendant failed to take responsibility for his actions and urging that the district court impose a sentence of eighteen months incarceration for the DWI to be run consecutively with the sentences for the remaining traffic offense convictions.

{9} Defendant then addressed the court. He stated that he told a "lie" when he told Officer Johnston that he had been driving the car prior to the tire blowout. He further stated that at trial his lawyer would not let him admit to the lie so he repeated the story. He also admitted that he had a prior DWI, but emphasized that he had not had one since 2001. Defendant again blamed his lawyer for not allowing him to admit to the "lie." Defense counsel clarified for the court that whether a defendant testifies is always the defendant's decision, it was ultimately Defendant's decision, and Defendant made the decision on his own free will. The district court sentenced Defendant to eighteen months incarceration followed by a one-year parole period for the aggravated DWI, but ran the sentences for the remaining offenses concurrently.

**DISCUSSION**

**A.     The District Court Did Not Err in Sentencing Defendant as a Fifth-Time DWI Offender**

{10} DWI sentencing is determined by the number of times an offender has been convicted of the offense. *See* §§ 66-8-102(E)-(K); *State v. Anaya,* 1997-NMSC-010, ¶ 18, 123 N.M. 14, 933 P.2d 223. Sections 66-8-l02(A) through (D) set forth the elements of a DWI offense. *See Anaya*, 1997-NMSC-010, ¶ 15. The remainder of the statute "is devoted entirely to sentencing matters and definitions." *Id*. In particular, the punishment increases with successive convictions. *Id*. Section 66-8-102(H), at issue here, provides that "[u]pon a fifth conviction pursuant to this section, an offender is

6

guilty of a fourth degree felony and . . . shall be sentenced to a term of imprisonment of two years, one year of which shall not be suspended, deferred or taken under advisement."

{11} Section 66-8-102(H) does not create a new offense, but rather enhances the sentence for repeat DWI offenders. *Anaya*, 1997-NMSC-010, ¶ 18. The enhancement determination is made by the court. *Id.* ¶ 19. While the State bears the initial burden of presenting evidence of the validity of each prior conviction, if the State makes this prima facie showing, the burden shifts to the defendant to present contrary evidence. *State v. Sedillo*, 2001-NMCA-001, ¶ 5, 130 N.M. 98, 18 P.3d 1051. The State, however, retains the burden of persuasion by a preponderance of the evidence. *Id.*

{12} Defendant argues that his sentence was illegal because the State failed to present any evidence of his four prior DWI convictions. Alternatively, Defendant argues that the statements he made during the sentencing hearing, as well as those of his counsel, did not amount to a knowing, intelligent, and voluntary waiver of the required proof of Defendant's prior DWI convictions. In particular, Defendant asserts that, because he was not first advised on the record of the requirement that the prior convictions must be documented, his waiver was not knowing. The State does not dispute that it did not present any documentary evidence of Defendant's prior DWIs. It argues, however, that at the sentencing hearing Defendant and his counsel

effectively stipulated to his four prior DWIs which obviated the need for the documentation.

{13}    Defendant acknowledges that he did not make this objection in the district court. He asserts, however, that the failure to establish his prior convictions renders his sentence illegal and that he may raise the illegality of his sentence for the first time on appeal; he further argues that this Court's review of the legality of the sentence is de novo. The State does not dispute that Defendant may make his argument for the first time on appeal, but contends on the basis of *Sedillo*, that our review is limited to whether substantial evidence supports the district court's predicate determination that Defendant was convicted of a fifth DWI. We agree with the State regarding the standard of review. In *Sedillo*, the Defendant challenged the sufficiency of the proof of his prior DWI convictions. *Id.* ¶ 2. This Court expressly determined that the challenge was subject to a substantial evidence standard of review. *See id.* ¶ 6. We therefore will consider Defendant's argument under the more deferential standard of review.

{14}    "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and

8

citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "[S]ubstantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted).

**{15}** *State v. Lopez*, 2009-NMCA-127, ¶¶ 20, 44, 147 N.M. 364, 223 P.3d 361, addresses the State's obligation under Section 66-8-102 to prove the required number of prior DWI convictions. In that case, the state presented, as evidence of the defendant's six prior DWI convictions, a single, uncertified judgment and sentence. *Lopez*, 2009-NMCA-127, ¶ 37. The judgment, which was not admitted into the record, merely referenced the defendant's admission to six prior convictions; the district court took judicial notice to supplement any deficiency. *Id*. ¶¶ 36-44. This Court held that the state's proof was insufficient because the only indication of its contents was presented through argument of counsel. *Id*. ¶ 43. Importantly, however, we also held that, "records of prior convictions must be properly admitted into the record and

9

available for review on appeal, *unless such proof is stipulated to or otherwise waived by [the d]efendant.*" *Id.* (emphasis added).

**{16}** A stipulation is "[a] voluntary agreement between opposing parties concerning some relevant point; esp., an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding." *Black's Law Dictionary* 1641 (10th ed. 2014). "Courts generally honor stipulations between the parties and uphold such agreements concerning [the] trial of a cause or conduct of litigation if the stipulations are not unreasonable[.]" *Peay v. Ortega*, 1984-NMSC-071, ¶ 4, 101 N.M. 564, 686 P.2d 254. Courts will enforce stipulations, including oral stipulations, reached in criminal cases. *See State v. Candelaria*, 2008-NMCA-120, ¶¶ 20-21, 144 N.M. 797, 192 P.3d 792.

**{17}** As mentioned, at the beginning of the sentencing hearing, Defendant's counsel stated, "Your honor this is a DWI. . . . He's looking at a year mandatory. . . . We're just looking for a one-year mandatory for a fifth offense DWI and we ask the court to impose that to give him credit for the time served and all the other mandatory requirements that come with a DWI." The prosecutor responded by arguing that Defendant should be incarcerated for eighteen months, but did not dispute that the sentence was to be imposed on the basis of a fifth offense DWI, i.e., the applicable statute was Section 66-8-102(H).

{18} This exchange between defense counsel and the prosecutor amounted to a stipulation, i.e., an agreement, between the parties through their counsel that Defendant was subject to sentencing for a fifth DWI because he had four prior DWI convictions. *See Garcia v. Co-Con, Inc.*, 1981-NMCA-065, ¶ 16, 96 N.M. 308, 629 P.2d 1237 ("A stipulation is an agreement between lawyers respecting business before the court, and, like any other agreement or contract, it is essential that the parties or their lawyers agree to its terms.") Unlike the parties in *Garcia*, Defendant's counsel was not silent in response to an offered agreement of fact, but was the first to introduce the fact to the court. *See id.* ¶¶ 15, 17-18. Indeed, in his reply brief Defendant does not dispute the State's argument that counsel's exchange amounted to a stipulation that excused the State from proving the four previous DWI convictions, and instead contends only that he did not waive his right to require documentary proof of the prior convictions.

{19} Further, even assuming the district court erred by relying on this exchange between counsel in lieu of the State's presentation of evidence of the four prior convictions, Defendant invited the error. "It is well established that a party may not invite error and then proceed to complain about it on appeal." *State v. Jim*, 2014-NMCA-089, ¶ 22, 332 P.3d 870. Here, Defendant invited both the district court and

11

the State to rely on his counsel's statement that Defendant was to be sentenced, pursuant to Section 66-8-102(H). Defendant may not now complain this was error.

{20} Because Defendant's counsel effectively stipulated to Defendant's four prior DWI convictions, it is unnecessary to consider whether Defendant himself made a knowing, intelligent, and voluntary waiver of any of the State's burden of presenting records of those convictions. *Lopez* identifies two exceptions to such proof: a waiver or a stipulation. In the context of litigation, a stipulation is understood to be accomplished through counsel. *See Black's Law Dictionary* at 1641. The extent of Defendant's understanding of and willingness to relieve the State of its burden is therefore immaterial.

**B.    Sufficient Evidence Supported Defendant's Aggravated DWI Conviction**

{21} Section 66-8-102(A) provides that "[i]t is unlawful for a person who is under the influence of intoxicating liquor *to drive* a vehicle." (Emphasis added.) NMSA 1978, Section 66-1-4.4(K) (2016) defines a "driver" as "every person who drives *or* is in actual physical control of a motor vehicle." (Emphasis added.) "Our jurisprudence interprets this provision as establishing two ways a person may 'drive' a vehicle [while intoxicated]: (1) DWI based on being in 'actual physical control' of the vehicle while impaired, whether or not the vehicle is moving, and (2) DWI based on actually driving a moving vehicle while impaired." *State v. Orquiz*, 2012-NMCA-

080, ¶ 4, 284 P.3d 418 (citing *State v. Sims*, 2010-NMSC-027, ¶¶ 7, 10-12, 148 N.M. 330, 236 P.3d 642).

{22}    These alternative approaches to determining whether a person is driving while intoxicated are reflected in UJI 14-4509 NMRA and UJI 14-4511 NMRA. UJI 14-4509 establishes the elements of aggravated DWI. The first element is that the defendant "operated a motor vehicle." *Id.* UJI 14-4511 defines "operating" a motor vehicle as either "driving the motor vehicle" or being "in actual physical control with the intent to drive the vehicle, whether or not the vehicle is moving[.]" Use Note 3 for UJI 14-4511 instructs that the court is to "[u]se only applicable . . . alternative[s]." Jury Instruction No. 4A, given to the jury in this case,[1] sets forth UJI 14-4511's second definition of "operating" a motor vehicle: "in actual physical control with the intent to drive the vehicle, whether or not the vehicle is moving[.]" Thus, by tendering the actual physical control instruction, the State elected to proceed against Defendant not on the basis that he had driven the Oldsmobile while intoxicated but rather on the basis that he was in physical control of the vehicle with the intent to drive it. We review the sufficiency of the evidence supporting Defendant's conviction with that understanding.

---

[1] Defendant does not object to any of the jury instructions. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

{23} Defendant does not dispute that he was intoxicated. However, he contends that, in view of the blown out tire, there was no evidence of actual physical control with intent to drive:

> The vehicle was undisput[ably] malfunctioning and, even if, as the prosecutor argued, it physically could have been driven on the rims, there was simply no evidence that Mr. Garcia intended to do so. . . . Mr. Garcia acknowledges that the jury was free to disregard his version of events, but the State was still required to prove beyond a reasonable doubt that Mr. Garcia intended to drive away. Evidence that Mr. Garcia was waiting on the side of the road with a blown-out tire and the engine off cannot establish that intent.

{24} "We review the evidence introduced at trial to determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179 (internal quotation marks and citation omitted). "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *Id.* New Mexico appellate courts will not invade the jury's province as fact-finder by "second-guess[ing] the jury's decision concerning the credibility of witnesses, reweigh[ing] the evidence, or substitut[ing] its judgment for that of the jury." *State v. Lucero*, 1994-NMCA-129, ¶ 10, 118 N.M. 696, 884 P.2d 1175. So long as "a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction," we will not upset a jury's conclusions. *State*

14

*v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057. Furthermore, when parts of a witness's testimony are "conflicting and ambiguous, it is the exclusive province of the jury to resolve the factual inconsistencies in that testimony." *State v. Sena*, 2008-NMSC-053, ¶ 11, 144 N.M. 821, 192 P.3d 1198 (alterations, omission, internal quotation marks, and citation omitted).

{25}     Jury Instruction No. 4, which tracked UJI 14-4512 NMRA, provided that in determining whether Defendant was in actual physical control of the vehicle and intended to drive the vehicle, the jury should consider the totality of the circumstances including:

1.     Whether the vehicle was running;

2.     Whether the ignition was in the on position;

3.     Where the ignition key was located;

4.     Where and in what position the driver was found in the vehicle;

5.     Whether the person was awake or asleep;

6.     Whether the vehicle's headlights were on;

7.     Where the vehicle was stopped;

8.     Whether the driver had voluntarily pulled off the road;

9.     The time of day;

10.     The weather conditions;

11. Whether the heater or air conditioner was on;

12. Whether the windows were up or down;

13. Whether the vehicle was operable; [and]

14. Any explanation of the circumstances shown by the evidence.

{26} Consistent with these factors that could be considered in determining whether Defendant was in physical control of his Oldsmobile with the intent to drive it, we conclude that the jury's decision was supported by substantial evidence. First, the keys were in the ignition. Second, Defendant was sitting in the driver's seat. Third, Defendant was awake. Fourth, the vehicle was stopped on the roadside shoulder of a highway in a dangerous location and was not voluntarily pulled off the road, which would suggest that Defendant intended to move the vehicle or continue to drive from the location of the tire blowout. Fifth, although Defendant claims that the vehicle was malfunctioning, the State established that the rim (with the remnants of the tire) was still on the wheel and the car's engine was functioning, and therefore it was operable. Sixth, the jury was free to conclude that Defendant's statement to Officer Johnston, that he had been test driving the vehicle immediately before the blowout, was not a lie. *See Rojo*, 1999-NMSC-001, ¶ 19 (stating that the jury is free to reject the defendant's version of the facts).

{27} The fact that Defendant had been driving the vehicle earlier, combined with the fact that he was found sitting in the driver's seat, was circumstantial evidence of an intent to drive the vehicle in the future. The inference of an intent to drive the vehicle was further reinforced by the fact that Duran never returned to the vehicle after the passage of fifty minutes. All of this evidence was sufficient for the jury to determine that Defendant was in actual physical control of his vehicle with the intent to drive. This Court will not second-guess the fact-finder's decision or reweigh the evidence.

{28} Defendant relies on *State v. Mailman*, 2010-NMSC-036, 148 N.M. 702, 242 P.3d 269 and *State v. Sims*, 2010-NMSC-027, 148 N.M. 330, 236 P.3d 642, for the proposition that he was not in actual physical control of his vehicle. In *Mailman*, a police officer approached the defendant in the parking lot, observed an open can of beer on the center console of his vehicle, and smelled a strong odor of alcohol on the defendant. *Id.* ¶¶ 2, 3. The officer looked for, but could not find, the keys to the defendant's vehicle and was unable to start the vehicle without a key, leading him to conclude that the vehicle was inoperable. *Id.* ¶ 5. The defendant admitted to drinking a six-pack of beer earlier in the day and refused to take a sobriety test. *Id.* ¶¶ 4, 5. Our Supreme Court held that without more, evidence that a defendant (1) "was in a non-moving, inoperable vehicle attempting to make a phone call[,]" (2) told the officer that his car broke down, and (3) asked the officer to help him arrange a tow was

17

insufficient as a matter of law to prove actual physical control. *Id.* ¶ 21. In so holding, the Court explained that "[w]hile the operability of the vehicle may be highly relevant to [the] determination [of actual physical control], it is not necessarily dispositive." *Id.* ¶ 19. The Court reversed the defendant's conviction and "remanded [the] case for a new trial based solely on whether [the d]efendant actually drove while intoxicated." *Id.* ¶¶ 27, 28.

**{29}** In *Sims*, the only issue presented for review was whether the defendant was in actual physical control of his vehicle while it was parked in a parking lot. 2010-NMSC-027, ¶¶ 1-3. The defendant was found asleep behind the wheel of his vehicle parked in a commercial parking lot. *Id.* ¶ 1. Our Supreme Court explained that "we do not believe that the Legislature intended to forbid intoxicated individuals from merely entering their vehicles as passive occupants or using their vehicles for temporary shelter." *Id.* ¶ 3. Ultimately, our Supreme Court concluded that "the [s]tate failed to prove that [the d]efendant used the vehicle other than as a passive occupant[, and i]t was pure speculation whether [the d]efendant would rouse himself and drive the vehicle." *Id.* ¶ 4. "Had the police officer or other witnesses observed [the d]efendant behind the steering wheel of a moving vehicle at or near the time of his apprehension, the [s]tate would not have to rely on actual physical control to prove that [the d]efendant was DWI." *Id.* ¶ 3 (internal quotation marks and citation omitted). The

Court ultimately held that under a theory of actual physical control, the State must prove "(1) the defendant was actually, not just potentially, exercising control over the vehicle, and (2) the defendant had the general intent to drive so as to pose a real danger to himself, herself, or the public." *Id.*

{30}     Both *Mailman* and *Sims* are distinguishable. Unlike *Mailman*, the Defendant's keys were in the ignition of his vehicle and were not missing. Stated another way, Defendant's Oldsmobile was operable. In addition, Defendant was not a "passive occupant" as was the defendant in *Sims*. Rather, Defendant was awake and alert when Officer Johnston arrived and was sitting in the driver's seat. Also, Defendant's vehicle was parked on the side of a highway, not in a parking lot. As such, Defendant's intent to drive his vehicle and the operability of his vehicle was not based on mere speculation and assumption, but instead, on the circumstances to which Officer Johnston testified.

{31}     We conclude that sufficient evidence was presented to support Defendant's conviction of aggravated DWI under the theory of actual physical control with the intent to drive.

**III.    Defendant Failed to Preserve the Claimed Error Regarding the Lack of Probable Cause to Arrest Him**

{32}     Pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, Defendant contends that

19

Officer Johnston lacked probable cause to arrest him for DWI and to invoke the Implied Consent Act's procedures for securing a breath alcohol test. The basis for Defendant's probable cause claim is his same argument that there was insufficient evidence that he was in actual physical control coupled with the fact that Officer Johnston conducted no field sobriety tests.

**{33}** However, Defendant did not challenge his arrest below and therefore he has not preserved this argument. *See State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted)); *State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)). Similarly, Defendant did not timely seek suppression of the breath alcohol test results pursuant to Rule 5-212(C) NMRA, which requires that a suppression motion be filed at least sixty days prior to trial. Further, Defendant does not contend that any lack of probable cause constituted fundamental error. For all of these reasons, we decline to address the argument. *See State v. Salazar*, 2006-NMCA-066, ¶ 20, 139 N.M. 603, 136 P.3d 1013 (declining to address the merits of the defendant's claim

because the claim had not been preserved and the defendant did not argue that it was fundamental error).

**CONCLUSION**

{34} We affirm Defendant's conviction and sentence for fifth-offense aggravated DWI.

{35} **IT IS SO ORDERED**

_____

**HENRY M. BOHNHOFF, Judge**

**WE CONCUR:**

_____
**JULIE J. VARGAS, Judge**

_____
**DANIEL J. GALLEGOS, Judge**