This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37074**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**MARSHALL JACKSON,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. Shoobridge, District Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}**    Defendant Marshall Jackson appeals his convictions, following a bench trial, for second-degree murder, aggravated burglary, tampering with evidence, and being a felon in possession of a firearm. Defendant argues that (1) the evidence was insufficient to support his convictions for second-degree murder, aggravated burglary, and tampering with evidence; (2) Defendant was not timely arraigned; and (3) the district court erred by enhancing Defendant's sentence based on a prior conviction that was too old. We affirm.

**DISCUSSION**[1]

**I.      Sufficiency of the Evidence**

**{2}**      "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). Our review employs a two-step process in which we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. "We do not reweigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179.

**A.      Second-Degree Murder**

**{3}**      To convict Defendant of second-degree murder, the State was required to prove Defendant killed Shamika White (Victim), Defendant knew that his "acts created a strong probability of death or great bodily harm" to Victim, and "[D]efendant did not act as a result of sufficient provocation[.]" UJI 14-210 NMRA (2010) (describing the elements of second-degree murder); *see* NMSA 1978, § 30-2-1(B) (1994) (defining second-degree murder). Based on the evidence admitted at the bench trial, the district court found Defendant shot and killed Victim on the morning of April 16, 2013, with knowledge that his actions created a strong probability of death or great bodily harm to Victim, and Defendant's acts were not a result of sufficient provocation. Defendant argues the evidence was insufficient to support his conviction for second-degree murder because the shooting was accidental and the testimony was inconsistent.

**{4}**      To the extent Defendant argues the evidence was insufficient to prove the knowledge element of second-degree murder, we disagree. *See State v. Ortega*, 1991-NMSC-084, ¶ 25, 112 N.M. 554, 817 P.2d 1196 (holding that an "unintentional or accidental killing will not suffice" to establish the mens rea element of second-degree murder), *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683. At trial, several witnesses testified they heard Victim state that Defendant shot her. After the shooting, Defendant continually pursued Victim. The witnesses testified that after Defendant shot Victim, they saw Defendant pressing the gun against Victim's forehead and that he pulled the trigger several times. Although none of the witnesses saw the actual shooting take place, we conclude the

---

[1]In this memorandum opinion, we limit our recitation of the facts and law to that necessary to our disposition of the case.

evidence of Defendant's conduct immediately after the shooting was sufficient to prove Defendant acted with the knowledge that his actions created a strong probability of death or great bodily harm to Victim. *See State v. Ortiz*, 2017-NMCA-006, ¶ 23, 387 P.3d 323 ("Direct evidence of knowledge and intent are rarely available. As such, intent and knowledge may be proved by circumstantial evidence." (citation omitted)); *State v. Wasson*, 1998-NMCA-087, ¶ 12, 125 N.M. 656, 964 P.2d 820 ("A defendant's knowledge or intent generally presents a question of fact for a [fact-finder] to decide.").

**{5}** To the extent Defendant argues his conduct amounted to manslaughter rather than second-degree murder because Victim provoked him, *see State v. Munoz*, 1992-NMCA-004, ¶ 5, 113 N.M. 489, 827 P.2d 1303 (explaining that "[t]he critical difference between murder and voluntary manslaughter is the existence of legally sufficient provocation"), we conclude the evidence is sufficient for a fact-finder to reasonably conclude Defendant was not provoked. "Sufficient provocation" consists of "any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions." UJI 14-222 NMRA. In this case, testimony showed that Defendant repeatedly pursued Victim, which suggests Victim was running away from Defendant. In addition, Dr. Sam Andrews, a forensic pathologist, testified the gun used to shoot Victim was likely fired from a range of two to three feet or greater, testimony that contradicted Defendant's claim that Victim pointed the gun at him and it went off in a struggle between Defendant and Victim. Based on this evidence, a fact-finder could reasonably infer that Defendant had control of the gun when Victim was shot. The district court was not obligated to believe Defendant's contrary version of events. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{6}** Defendant also claims the evidence was insufficient to support his conviction because the witnesses all had inconsistent stories. We will not reweigh evidence or assess witness credibility on appeal. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine what weight to give testimony and to assess credibility). Viewing the evidence in the light most favorable to the verdict and indulging all reasonable inferences in favor of conviction, we conclude that the evidence was sufficient to permit a rational fact-finder to find Defendant guilty of second-degree murder beyond a reasonable doubt.

## B. Aggravated Burglary

**{7}** Aggravated burglary consists of unauthorized entry into a dwelling with intent to commit a felony, when the person is armed with a deadly weapon. NMSA 1978, § 30-16-4(A) (1963). The district court found that Defendant entered the dwelling of Joann Morgan without authorization and with the intent to murder Victim once inside, and that Defendant was armed with a gun that he placed against Victim's head and attempted to fire on multiple occasions. Defendant argues the evidence was insufficient to convict him of aggravated burglary because the State did not prove that Defendant entered Morgan's house without authorization, that he intended to commit a felony, or that he was armed with a deadly weapon.

**{8}** The trial testimony supports the district court's findings. Although Morgan testified that she was getting ready to open the door, she testified that before she could do so, Victim and Defendant forced their way inside the home and knocked her down.[2] To the extent Defendant argues he was authorized to enter Morgan's home because he had been invited to her home in the past, we note that the evidence did not demonstrate Defendant was invited into the home on this particular occasion, and Defendant has not cited any law to support a claim of blanket authorization to enter Morgan's home based on the relationship between Morgan and Defendant. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed . . . on appeal."); *cf. State v. Parvilus*, 2014-NMSC-028, ¶ 24, 332 P.3d 281 (concluding that a defendant who entered his wife's separate dwelling was lawfully convicted of aggravated burglary).

**{9}** Concerning Defendant's intent to commit a felony in the home and possession of a deadly weapon, three witnesses who were in the home all testified that Defendant had a gun with him, and that while in the home he placed it to Victim's head and pulled the trigger several times. Although Defendant testified he never picked up the gun while inside the house, the district court was permitted to disregard Defendant's version of events. *See Rojo*, 1999-NMSC-001, ¶ 19 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the [fact-finder] is free to reject [the d]efendant's version of the facts."). We conclude sufficient evidence supports Defendant's conviction for aggravated battery.

## C.    Tampering With Evidence

**{10}** "Tampering with evidence consists of destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." NMSA 1978, § 30-22-5(A) (2003). The district court found Defendant hid the gun that he used to shoot Victim in a woodpile, with the intent to prevent his apprehension, prosecution, or conviction. Defendant argues his tampering conviction was based on mere speculation because no one saw Defendant hide the gun in the woodpile and the State did not produce any evidence that Defendant's fingerprints were on the gun or that he touched the gun.

**{11}** Three eyewitnesses testified they saw Defendant in possession of the gun while in Morgan's home. Defendant thereafter ran out of the house, and the police responded within a few minutes. They found Defendant in the alley, not far from the woodpile in Morgan's backyard where the gun was found. The gun was smeared with blood, and Defendant's hands had blood on them. In addition, DNA testing conducted on the slide, grip, and trigger of the gun could not eliminate Defendant or any paternal male relative as a source of male DNA on the gun. Reviewing the evidence in the light most favorable to the conviction and indulging all reasonable inferences and resolving all conflicts in

---

[2]The testimony of another witness supported the finding that Defendant entered without authorization, although the witness's testimony was not exactly the same as Morgan's testimony. The witness testified that after Morgan let Victim inside, Morgan shut the door, and thereafter Defendant pushed the door open and entered the home.

favor of the conviction, there is ample evidence upon which a reasonable fact-finder could conclude that Defendant hid the gun in the woodpile after he ran out of the house, with the intent to prevent his apprehension, prosecution, or conviction. *See State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (explaining that sufficient evidence can be based on circumstantial evidence).

## II.     Timing of Arraignment

**{12}**     Defendant argues he was not timely arraigned because his arraignment took place more than one year after he was arrested. Rule 5-303(A) NMRA requires arraignment to occur within fifteen days "after the date of the filing of the information or indictment or the date of arrest, *whichever is later.*" (Emphasis added.) The criminal information in this case was filed on June 18, 2014, and Defendant was arraigned on June 30, 2014, within the required fifteen days. We therefore conclude Defendant was timely arraigned. To the extent Defendant is attempting to argue he should have been arraigned in magistrate court based on the complaint filed in magistrate court, we conclude Defendant has not sufficiently developed such an argument. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

## III.     Habitual Offender Enhancement

**{13}**     Defendant argues the district court erred by enhancing his sentence because it applied habitual time based on a prior felony that was over ten years old. We disagree. A sentence may be enhanced by a prior felony conviction "when less than ten years have passed prior to the instant felony conviction since the person completed serving his sentence or period of probation or parole for the prior felony, whichever is later[.]" NMSA 1978, § 31-18-17(D)(1) (2003). We review the district court's finding that Defendant had been convicted of a prior felony and therefore was subject to sentencing as a habitual offender to determine if it was supported by a preponderance of the evidence. *See State v. Smith*, 2000-NMSC-005, ¶ 9, 128 N.M. 588, 995 P.2d 1030. Defendant was convicted in the current case on February 29, 2016, when the district court issued an order adjudicating Defendant guilty. *See State v. Torres*, 2018-NMSC-013, ¶ 72, 413 P.3d 467 ("The habitual offender statute textually calculates felon status based on the date of the current felony conviction, not the date of the criminal offense."); *State v. Larranaga*, 1967-NMSC-047, ¶ 7, 77 N.M. 528, 424 P.2d 804 (stating that a "conviction" arises from a finding of guilt and not the imposition of a sentence). The State claims the order of discharge from Defendant's prior felony indicated he finalized his sentence for the prior conviction on April 2, 2008. Defendant maintains he finalized his sentence for that conviction on December 2, 2007. Using either date, Defendant completed his sentence for the prior conviction within ten years of the date of the instant conviction. We therefore conclude that the district court did not err by using Defendant's prior conviction to enhance his sentence.

## CONCLUSION

**{14}** We affirm.

**{15} IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**